FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2014 APR 10 P 4:00

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| WARNER MUSIC GROUP CORP., UMG RECORDINGS, INC., SONY MUSIC ENTERTAINMENT, and CAPITOL RECORDS, LLC, | |
| Plaintiffs, | Civil Action No. 1:14CV374 LO/IDD |
| v. | JURY TRIAL DEMANDED |
| MEGAUPLOAD LIMITED, VESTOR LIMITED, KIM DOTCOM, MATHIAS ORTMANN, and BRAM VAN DER KOLK, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Warner Music Group Corp., UMG Recordings, Inc., Sony Music Entertainment, and Capitol Records, LLC, by their attorneys, hereby allege as follows:

### NATURE OF THE ACTION

1.      This is an action for copyright infringement under the copyright laws of the United States, Title 17, United States Code.

2.      Plaintiffs are record companies that, along with their affiliated companies, produce, manufacture, distribute, sell, and license the vast majority of legitimate commercial sound recordings in this country.  Defendants are a group of entities and individuals that operated a notorious Internet copyright infringement website and service, known as "Megaupload," up until the time of their January 2012 indictment on federal criminal copyright infringement charges.  The United States Department of Justice's criminal case against Defendants is currently pending in this District.  Defendants' business, which included operating the Megaupload

website formerly located at www.Megaupload.com, has been devoted to the Internet piracy of

the most popular copyrighted entertainment content in the United States and around the world,

including Plaintiffs' sound recordings to which Plaintiffs and/or their affiliated and/or

predecessor companies own exclusive rights under copyright and, on information and belief,

Plaintiffs' sound recordings protected under the laws of various states.

3.      As set forth more fully herein, Defendants have actively and intentionally

encouraged their users to upload to Defendants' servers infringing copies of the most popular

entertainment content, including Plaintiffs' sound recordings, for the purpose of distributing

those copies to millions of other users with no license or permission to copy or access them.

Indeed, for several years, through what it called an "Uploader Rewards" program, Defendants

even paid their users to upload popular content that Defendants knew infringed copyrights, until

Defendants finally discontinued this program a few months before their indictment.

4.      As part of their copyright infringement scheme, Defendants have actively and

intentionally encouraged their users to distribute links to this infringing content across the

Internet, including to third party "linking" sites on which Defendants have relied to spread the

word about the available infringing files and make those files easy to find.  This scheme has

enabled Defendants to earn illicit fortunes through the sale of "premium" subscriptions that

permit users to engage in rapid, unrestricted downloading of popular infringing content, and

through the sale of advertising space on www.Megaupload.com and related websites.

5.      In December 2011, the United States Trade Representative named Megaupload a

"notorious market" in an official report that listed sites where copyright theft is open, pervasive,

and undermines the respect for the rule of law.  According to the United States Trade

Representative, Megaupload allowed for "the unauthorized distribution of protected content

2

through subscriptions and reward schemes to popular uploaders." In January 2012, the United States Department of Justice indicted Defendants on charges including criminal copyright infringement. The Department of Justice charged Defendants "with running an international organized criminal enterprise allegedly responsible for massive worldwide online piracy of numerous types of copyrighted works, through Megaupload.com and other related sites." In a recent summary of evidence filed with this Court, the Department of Justice cited evidence that Defendants "knew that the business depended on the knowing reproduction and distribution of copyrighted works."

6.      According to the results of a worldwide investigation by the Department of Justice and the Federal Bureau of Investigation, Defendants' copyright infringement scheme has been wildly successful for Defendants, while causing widespread and extensive harm to copyright owners: Defendants have generated more than $175 million in illicit profits from copyright infringement while causing more than a half a billion dollars in harm to copyright owners. According to Defendants themselves, the www.Megaupload.com website logged more than one billion site visits, and at one time Megaupload boasted more than 150 million registered users and 50 million daily visitors, and accounted for four percent of the total traffic on the Internet.

7.      The massive copyright infringement caused by Defendants' lawless conduct has harmed Plaintiffs in ways that cannot be fully measured and cannot be fully remedied by monetary damages. Plaintiffs bring this lawsuit to seek compensation for this massive copyright infringement, and an injunction to prevent further irreparable harm.

8.      Megaupload was in no respect designed to be a private data storage provider. Users without premium subscriptions were restricted not only in their downloading capabilities,

but also in their ability to store files on the site. Any content that users uploaded would be deleted if it was not also downloaded within a certain period of time—after 21 days in the case of unregistered, anonymous users, and after 90 days in the case of registered users who were not premium subscribers. Only premium subscribers (estimated to be one percent of users) could use Megaupload for long-term file storage. According to a Federal Bureau of Investigation analysis, the vast majority of users had never even uploaded a single file to a Megaupload upload site and used the service solely to download and otherwise access content.

### PLAINTIFFS AND THEIR BUSINESS

9.     Plaintiff Warner Music Group Corp. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

10.     Plaintiff UMG Recordings, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

11.     Plaintiff Sony Music Entertainment is a partnership duly formed under the laws of the State of Delaware, with its principal place of business in the State of New York.

12.     Plaintiff Capitol Records, LLC is a limited liability company duly formed under the laws of the State of Delaware, with its principal place of business in the State of California.

13.     Plaintiffs Warner Music Group Corp., UMG Recordings, Inc., Sony Music Entertainment, and Capitol Records, LLC are collectively referred to herein as "Plaintiffs."

14.     Plaintiffs, along with their affiliated companies, are the copyright owners or owners of exclusive rights (by way of agreement) with respect to the vast majority of copyrighted sound recordings sold in the United States. Under the Copyright Act, Plaintiffs

4

have, *inter alia*, the exclusive rights to reproduce the copyrighted works, to distribute copies or phonorecords of the copyrighted works to the public, to perform publicly the copyrighted works by means of digital transmission, and to authorize or license any such activities. *See* 17 U.S.C. §§ 106(1), (3), (6).

15.     Plaintiffs manufacture, distribute, license, and sell phonorecords (e.g., the material objects and/or digital files containing recorded music) in the form of CDs, cassettes and other tangible media. Plaintiffs also distribute, license, and sell their sound recordings in the form of digital audio files delivered or performed via the Internet. During the time period of Megaupload's operation, Plaintiffs and their business partners provided a wide variety of authorized ways for consumers to enjoy recorded music distributed and performed over the Internet, including digital download and/or streaming services like Apple's iTunes, Amazon, Rhapsody, Spotify, and countless others. Unlike Defendants' service, these services operated lawfully and paid Plaintiffs for sound recordings that they distributed or performed.

16.     Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and license sound recordings embodying their performances. Plaintiffs, their employees, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of sound recordings to the public, including the authorized online sale and distribution described above.

17.     Attached as Exhibit A is an exemplary list of a small number of the thousands of sound recordings to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright that have been infringed by Defendants. As set forth in Exhibit

A, the copyright in each of these sound recordings is registered in the United States Copyright Office. *See* 17 U.S.C. §§ 409-412.

### DEFENDANTS

18.     Defendant Megaupload Limited is a registered company in Hong Kong, and is the registered owner of Megaupload.com, the primary website operated by Defendants, and Megaclick.com, a site that offered advertising services on Defendants' websites.

19.     Defendant Kim Dotcom, aka Kim Schmitz, aka Kim Tim Jim Vestor ("Dotcom"), is a resident of both Hong Kong and New Zealand, and is a dual citizen of Finland and Germany. Dotcom founded Megaupload Limited and, until on or about August 14, 2011, was its Chief Executive Officer. Dotcom supervised the development of Megaupload.com and its associated websites and administered the Megaupload.com domain name. Dotcom also personally negotiated Megaupload's contract with Carpathia Hosting, Inc. ("Carpathia"), a Virginia corporation that provided Defendants with Internet hosting services. In addition, Dotcom is the director and sole shareholder of Vestor Limited, through which he owns the majority share of Megaupload Limited. Dotcom personally participated in and directed, and profited from, the infringing actions of Megaupload Limited. In 2010 alone, Dotcom received more than $42 million from his involvement with Megaupload Limited.

20.     Defendant Vestor Limited ("Vestor") is a registered company in Hong Kong. Vestor is the majority shareholder of Megaupload Limited. Dotcom is the sole director and shareholder of Vestor. Vestor is also the sole shareholder of Megamedia Limited, which is the parent company and sole shareholder of Megavideo Limited, the registered owner of Megavideo.com.

21.     Defendant Mathias Ortmann ("Ortmann") is a citizen of Germany and a resident of both Germany and Hong Kong. Ortmann is the Chief Technical Officer, co-founder, and a director of Megaupload Limited. By virtue of his position as the director and sole shareholder of Netplus International Limited LLC, Ortmann effectively owns 25% of the shares of Megaupload Limited. Ortmann was extensively involved in the technical operations of Megaupload, including, for example, overseeing the software programmers who developed Megaupload, handling technical issues with Internet service providers, setting up new servers, and solving connectivity issues. Ortmann personally participated in and directed, and profited from, the infringing actions of Megaupload Limited. In 2010 alone, Ortmann received more than $9 million from his involvement with Megaupload Limited.

22.     Bram van der Kolk ("van der Kolk"), aka Bramos, is a resident of both the Netherlands and New Zealand, and is a Dutch citizen. Van der Kolk, by virtue of his position as the director and sole shareholder of Mindpoint International Limited LLC, effectively owns 2.5% of Megaupload Limited. Van der Kolk oversaw programming on Megaupload, as well as the underlying network infrastructure of the site, and at one time was responsible for managing the Uploader Rewards program. Van der Kolk also was responsible for responding to copyright infringement takedown notices sent to Megaupload. Van der Kolk personally participated in and directed, and profited from, the infringing actions of Megaupload Limited. In 2010 alone, van der Kolk received more than $2 million from his involvement with Megaupload Limited.

23.     Defendants Megaupload Limited, Dotcom, Vestor, Ortmann, and van der Kolk are collectively referred to as "Defendants." On information and belief, at all times relevant hereto, Defendants acted under common ownership and control and/or served as the agents of one another in infringing Plaintiffs' copyrights.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

25.     This Court has personal jurisdiction over Defendants because this action concerns

Defendants' operation of a commercial business, Megaupload, through which Defendants

knowingly and intentionally transacted business and entered into contracts with residents of

Virginia and this District.  The Megaupload website was freely accessible to Virginia residents

and Defendants in fact sold Megaupload subscriptions to Virginia residents, made payments to

Virginia residents under the Uploader Rewards program, and provided infringing copies of

Plaintiffs' works to Virginia residents.

26.     This Court also has personal jurisdiction over Defendants because they entered

into a long-term, ongoing business arrangement with a Virginia corporation—Carpathia—that is

headquartered within this District, and that provided Defendants with Internet hosting services

for Megaupload.  Those services included providing more than 1,000 computer servers to

Megaupload, at least 525 of which were located at a Carpathia facility within this District.

Currently, all of the more than 1,000 servers that Carpathia leased to Megaupload are located

within this District.  Carpathia's Internet hosting services were essential to the operation of

Megaupload, the infringement of Plaintiffs' copyrighted works, and the enormous profits reaped

by Defendants.  Each day, hundreds of thousands of files—including infringing copies of

Plaintiffs' works—were uploaded to and downloaded from the Virginia-based Carpathia servers

operated and controlled by Defendants.  Moreover, under the standard terms of Carpathia's

service agreements with its customers, Defendants agreed to indemnify Carpathia for any

liability for copyright infringement occurring on the Megaupload servers that Carpathia leased to

Defendants, and further consented to being subject to personal jurisdiction in state and federal courts in Loudoun County, Virginia, with respect to any disputes arising out of the agreement.

27.     This Court has personal jurisdiction over the individual Defendants because, at times relevant to this Complaint, each individual Defendant worked with or acted in concert with the other Defendants to operate Megaupload and/or facilitate its and its users' copyright infringement in Virginia and this District, and each also profited from that infringement. Furthermore, the individual Defendants had direct involvement in Megaupload's contractual relationship with Carpathia and in the operation and control of the Megaupload servers in this District.

28.     Venue in this District is proper under 28 U.S.C. §§ 1391(b), (c), and (d) and 28 U.S.C. § 1400(a).

<b>DEFENDANTS' INFRINGING CONDUCT</b>

**A.      Operation of Megaupload and Defendants' Business Model**

29.     Beginning in late 2005 and continuing at least to January 2012 when Defendants were indicted, Megaupload amassed the millions of popular content files that it hosted on its servers and offered to the public for download by openly encouraging users to upload these files. Until mid-2011, Megaupload went so far as to actually pay its users to do this.  Any Internet users who went to the Megaupload website could upload content files, regardless of whether the users registered as members.  Upon completion of the uploads, Megaupload reproduced each file on at least one computer server it controlled and provided the users with a Uniform Resource Locator ("URL") "link" beginning with "megaupload.com" for each uploaded file.  The uploading users could then propagate the links broadly over the Internet, so that anyone

interested in downloading or otherwise accessing copies of the files could easily find them on Megaupload's servers.

30. Users in possession of the Megaupload URL links could access and download the associated content from Megaupload's servers. By "clicking" the URL links (or copying them into any web browser), users were taken to a "download page" on the Megaupload website that allowed users to download the content, including Plaintiffs' recorded music, from computer servers controlled by Defendants.

31. To conceal the scope of infringement occurring on the Megaupload website, Defendants did not provide users with a searchable index of files available for download from the site (although Defendants themselves had access to such an index). Instead, Defendants relied on numerous third party "linking" sites to host, organize, and promote URL links to Megaupload-hosted infringing content, including Plaintiffs' copyrighted works. Such linking sites made infringing content broadly and easily accessible to users by maintaining an index of links to content files organized by category and/or alphabetically by titles of the copyrighted work; some such linking sites also offered search boxes where users could enter queries quickly to find the content that they sought. Many of these linking sites were blatant pirate sites, hosting thousands of links to infringing material. Several of these linking sites exclusively offered Megaupload links. Any visitor could quickly see the widespread availability on many linking sites of links to infringing content on Megaupload. Defendants knew of this open infringement on pirate linking sites and closely tracked the traffic from those sites to Megaupload. Defendants also knowingly interacted with users of linking sites and have visited such sites themselves. Defendants also provided financial incentives for premium users to post links to these sites through the Uploader Rewards program.

32.     Megaupload had complete control of its physical infrastructure (i.e., the servers, databases and software that comprise and control the Megaupload system), as well as the activities occurring on its system. Megaupload physically stored the content files on its servers, keeping track of each content file in sophisticated databases, and could remove or disable access to infringing content files if it chose to do so; it also could prevent content files from being stored in the first place, and from being provided to the general public. Megaupload also maintained the ability to supervise or control the activities of users. It controlled the activities even of unregistered users, by limiting the frequency and speed of downloads for users who did not purchase "premium" subscriptions. Megaupload also had the ability to terminate users or block their access to the Megaupload site and, in fact, legally reserved the right to do so under its terms of service. Through its infrastructure, Megaupload provided the site and facilities on which the infringement occurred and had the right and ability to prevent or limit the infringing activities occurring on its site.

33.     Megaupload made money in two ways: premium subscriptions and online advertising. Megaupload charged "premium" users subscription fees ranging from a few dollars per day up to approximately $260 for a lifetime subscription. In exchange for payment, premium users would receive faster access to infringing files, including Plaintiffs' copyrighted works, on Defendants' computer servers. Premium users of the site were able to download and upload files with few, if any, limitations. Defendants collected subscription fees of more than $150 million from premium users during Megaupload's existence.

34.     The content for which premium users were willing to pay was overwhelmingly infringing. It was this popular, pirated content, available for download at the click of a button, which Defendants used as the "draw" to attract users, which not only increased premium

subscription fees, as new users were converted into premium subscribers, but also increased online advertising revenues.

35.     With respect to online advertising, the infringement-driven traffic on Megaupload and its associated websites increased the volume of online advertising impressions and transactions, leading to higher revenues.  Online advertising on Megaupload and its associated websites, which was heavily dependent on the popularity of copyright infringing content to attract website visits, yielded more than $25 million for Defendants.

**B.     Defendants' Active Encouragement of Infringement**

36.     To ensure a vast and ever-growing supply of popular copyrighted content to which they could sell premium access, Defendants paid users to upload popular content to Megaupload's servers.  Defendants' Uploader Rewards program promised premium subscribers cash and other financial incentives if they uploaded popular works, primarily copyrighted works, to Megaupload's servers.  The rewards program also encouraged users to publicly promote links to that content, so that the content would be widely downloaded.

37.     Although the Uploader Rewards program's financial incentives changed over the life of Megaupload, during the time period most relevant to this Complaint, Defendants offered one reward point each time that a user's file was downloaded, and offered the user rewards ranging from free premium membership subscriptions all the way to cash awards of as much as $10,000.

38.     These financial incentives were designed to encourage both uploading and promotion of popular copyrighted entertainment content.  That infringing content acted as a "draw" to attract millions of downloading users, to whom Defendants could sell premium memberships, and to whom Defendants could also display online advertising.

**C.   Defendants' Efforts To Thwart Removal of Infringing Content and Refusal To Take Steps To Stop or Limit Infringement**

39.     Defendants provided an "Abuse Tool" that purportedly would allow a copyright holder to remove or completely disable access to copyright-infringing files on Megaupload's servers. The Abuse Tool allowed copyright holders to enter specific URL links to infringing copies of their copyrighted content of which they were aware. Defendants represented to copyright holders that, upon receipt of a URL link through the Abuse Tool, Defendants' systems would then remove, or disable access to, the infringing file associated with that URL link.

40.     The Abuse Tool did not actually function in the manner Defendants represented. If the infringing file on Defendants' servers had more than one URL link associated with it, which was often the case, then in response to a URL link reported by a copyright holder through the Abuse Tool, Defendants would delete only that particular URL link itself, and would leave the other links and the infringing file in place on Megaupload's system, so that the infringing file continued to be accessible to the general public. The purpose of this approach was to misrepresent the nature of the Abuse Tool, frustrate copyright owners' use of it, and ensure that the most popular infringing files would continue to be broadly available on Megaupload for download.

41.     By intentionally hampering the effectiveness of the Abuse Tool, and by failing to take simple measures to stop, or substantially limit, the massive infringement occurring on Megaupload, Defendants ensured that Megaupload's massive library of popular, infringing entertainment content remained available and accessible to users, despite the efforts of copyright owners, including Plaintiffs, to protect their copyrighted content. Defendants engaged in this conduct because Megaupload's business model depended on widespread copyright infringement.

42.     Defendants could have prevented large-scale infringement of copyrighted content by implementing account restrictions, such as requiring files to be password-protected, so that only the account-holder (or those individually authorized by the account-holder) could access copies of the files uploaded by that account-holder.  Instead, Megaupload designed its URL links so that anyone who could locate the link could access the linked-to content at any time on devices having access to the Internet.

43.     Defendants could also have implemented various readily available and effective technological solutions (including, without limitation, automated filtering using digital fingerprinting-based content-identification technology) to identify and prevent infringement of copyrighted content.  Defendants chose not to do so.  And although Megaupload had implemented a technology called "MD5 hash" filtering to identify and block uploads of various types of illicit content such as child pornography, Defendants chose not to deploy that technology to identify and block infringing uploads of copyrighted works that had already been subject to Digital Millennium Copyright Act takedown notices by Plaintiffs and other copyright holders.

44.     Defendants also could have reduced and deterred infringement by taking action to terminate Megaupload users who were blatant or repeat infringers.  Defendants had the ability to readily identify users who uploaded the infringing content identified in takedown notices submitted by copyright owners.  Megaupload kept detailed records of such users for purposes of compensating them through the Uploader Rewards program.  Rather than terminating the activities or memberships of such infringing users, Megaupload did the opposite: it compensated them for their infringement.

### D.    The Individual Defendants' Conduct

45.    The individual Defendants personally directed and participated in, exercised control over, and benefited from the specific infringing, infringement-inducing, and infringement-facilitating conduct described above, which resulted in the massive infringement of Plaintiffs' copyrights.  This included, but was not limited to, the adoption of a business plan dependent upon massive copyright infringement; the design and implementation of the Uploader Rewards program, which actively encouraged copyright infringement; the design and implementation of the Abuse Tool in a way that was intended to frustrate copyright holder enforcement efforts; and the refusal to implement readily-available technologies and procedures to mitigate the infringement.

## COUNT I
### Direct Copyright Infringement
### (Against All Defendants)

46.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47.    Without authorization from any Plaintiff, or right under law, Defendants Megaupload Limited, Vestor Limited, Dotcom, Ortmann, and van der Kolk, through their operation of Megaupload and associated websites, have directly infringed thousands of works to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright, including those listed in Exhibit A hereto, by distributing unauthorized copies of those works to users in violation of the Copyright Act, 17 U.S.C. § 106.

48.    Defendant Megaupload Limited is directly liable for these acts of infringement under the Copyright Act.  The infringing files resided on servers controlled by Megaupload Limited.  Megaupload Limited caused and effected the infringing acts of providing copies of

those works to its users, and promoted additional infringement by providing the uploading user a URL link that allowed anyone with the link to access the file. In addition, as set forth above, Megaupload Limited played an active role in ensuring that it had the most popular content on its servers, that the URL links to those infringing content files were widely disseminated on the Internet, and that the links were advertised and promoted by pirate linking sites, so that the maximum number of Megaupload users would access the infringing content. Thus, Megaupload Limited did not merely respond to user requests in a passive, content-neutral, and automated manner. To the contrary, as set forth above, Megaupload Limited was, during the operation of Megaupload, actively involved in attracting and storing countless copies of infringing content, and making that content broadly available and accessible to the public at large. It further exercised active control over the process of providing that content by regulating the volume and speed of transmissions to users who had not yet purchased "premium" subscriptions. In these and other ways, Megaupload Limited actively engaged in the infringement of Plaintiffs' copyrights in a vast number of copyrighted works.

49.    Megaupload Limited also made unauthorized copies of Plaintiffs' works to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright, including those listed in Exhibit A hereto, and stored them on its own servers in violation of the Copyright Act, 17 U.S.C. § 106. These unauthorized copies were not made by or at the request of Megaupload users, but rather through the decisions and actions of Megaupload Limited, for its own business purposes.

50.    Defendant Dotcom is jointly and severally liable for each act of Megaupload Limited's direct infringement because he personally directed and participated in, and benefited from, Megaupload Limited's infringing conduct as alleged herein. Dotcom supervised the

development of the Megaupload site and its associated websites, and has been directly, actively, and personally involved in Megaupload Limited's infringing activities.

51.    Defendants Vestor Limited, Ortmann, and van der Kolk are liable for the acts of infringement identified above for acting in concert with Defendants Megaupload Limited and Dotcom in operating the Megaupload website, and for personally directing, participating in, and benefiting from Megaupload Limited's infringing conduct as alleged herein.

52.    Defendants' acts of infringement have been willful, intentional, purposeful, and in disregard of Plaintiffs' rights under the Copyright Act. Defendants knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct. Plaintiffs did not authorize Defendants' acts.

53.    Plaintiffs have been harmed as a direct and proximate result of the infringing acts set forth above.

54.    As a result of Defendants' willful copyright infringement, Plaintiffs have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money damages.

## COUNT II
### Inducement of Copyright Infringement
### (Against All Defendants)

55.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 54 as if fully set forth herein.

56.    Users of Megaupload and associated websites have directly infringed Plaintiffs' works to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright, including without limitation those copyrighted works identified in Exhibit A hereto, by copying, distributing, and otherwise accessing works owned by Plaintiffs through

Megaupload and associated websites, without authorization from any Plaintiff, or right under law, in violation of the Copyright Act, 17 U.S.C. § 106.

57.     Defendant Megaupload Limited is liable under the Copyright Act for inducing the infringing acts of Megaupload users. Megaupload Limited operated Megaupload and provided the website and service to its users, with the object of promoting the use of Megaupload to infringe Plaintiffs' copyrighted sound recordings, among other types of copyrighted content, as shown by Megaupload Limited's clear expression and other affirmative steps to foster infringement. Megaupload Limited is therefore liable for inducing Megaupload users to directly infringe Plaintiffs' copyrighted works, including those listed in Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

58.     Defendant Dotcom is jointly and severally liable for each act of infringement for which Megaupload Limited is liable because he personally directed and participated in, and benefited from, Megaupload Limited's infringing conduct as alleged herein.

59.     Defendants Vestor Limited, Ortmann, and van der Kolk are liable for the acts of infringement identified above for acting in concert with Defendants Megaupload Limited and Dotcom to operate the Megaupload website and for personally directing, participating in, and benefiting from Megaupload Limited's infringing conduct as alleged herein.

60.     Defendants' acts of inducement of copyright infringement have been willful, intentional, purposeful, and in disregard of Plaintiffs' rights under the Copyright Act. Defendants knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct. Plaintiffs did not authorize Defendants' acts.

61.     Plaintiffs have been harmed as a direct and proximate result of the infringing acts set forth above.

62.     As a result of Defendants' willful inducement of copyright infringement, Plaintiffs have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money damages.

## COUNT III
### Vicarious Copyright Infringement
### (Against All Defendants)

63.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.     Users of Megaupload and associated websites have directly infringed Plaintiffs' works to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright, including without limitation those copyrighted works identified in Exhibit A hereto, by copying, distributing, and otherwise accessing works owned by Plaintiffs through Megaupload and associated websites, without authorization from any Plaintiff, or right under law, in violation of the Copyright Act, 17 U.S.C. § 106. Defendants are liable as secondary infringers under the Copyright Act for each act of direct infringement of Plaintiffs' works by Megaupload users.

65.     Defendant Megaupload is liable under the Copyright Act for the infringing acts of Megaupload users as a vicarious copyright infringer. Megaupload Limited had the right and ability to supervise and control Megaupload users' infringing activity as set forth above, and derived a financial benefit directly attributable to its users' copyright infringement, including infringement of Plaintiffs' copyrights. Plaintiffs' copyrighted works acted as a "draw" that attracted both paying users and advertising to the Megaupload website and its associated websites. And by Defendants' own admissions, Megaupload frequently exercised its right and ability to supervise and control its users' copying and distribution of files by severely limiting

users' ability to upload illicit content, such as files that contained child pornography. Megaupload Limited is therefore vicariously liable for Megaupload users' direct infringement of Plaintiffs' copyrighted works, including those listed in Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

66.     Defendant Dotcom is jointly and severally liable for each act of infringement for which Megaupload Limited is liable because he personally directed and participated in, and benefited from, Megaupload Limited's infringing conduct as alleged herein.

67.     Defendants Vestor Limited, Ortmann, and van der Kolk are likewise liable for the acts of infringement identified above for acting in concert with Defendants Megaupload Limited and Dotcom to operate the Megaupload website and for personally directing, participating in, and benefiting from Megaupload Limited's infringing conduct as alleged herein.

68.     Defendants' acts of vicarious infringement have been willful, intentional, purposeful, and in disregard of Plaintiffs' rights under the Copyright Act.  Defendants knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct. Plaintiffs did not authorize Defendants' acts.

69.     Plaintiffs have been harmed as a direct and proximate result of the infringing acts set forth above.

70.     As a result of Defendants' willful acts of vicarious copyright infringement, Plaintiffs have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money damages.

## COUNT IV

### Contributory Copyright Infringement
### (Against All Defendants)

71.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 70 as if fully set forth herein.

72.     Users of Megaupload and associated websites have directly infringed Plaintiffs' works to which Plaintiffs and/or their affiliated and/or predecessor companies own exclusive rights under copyright, including without limitation those copyrighted works identified in Exhibit A hereto, by copying, distributing, and otherwise accessing works owned by Plaintiffs through Megaupload and associated websites, without authorization from any Plaintiff, or right under law, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* Defendants are liable as secondary infringers under the Copyright Act for each act of direct infringement of Plaintiffs' works by Megaupload users.

73.     Defendant Megaupload Limited is liable under the Copyright Act for the infringing acts of Megaupload users as a contributory copyright infringer. Megaupload Limited had actual and constructive knowledge of massive copyright infringement of Plaintiffs' copyrighted works by Megaupload users, including, without limitation, by means of repeated notices sent to it on behalf of Plaintiffs and other copyright holders. Indeed, Megaupload Limited had full knowledge that Megaupload was being used overwhelmingly to infringe the rights of copyright owners, including Plaintiffs. Despite having that knowledge, Megaupload Limited continued to contribute materially to that infringement as set forth above. Without the active and material contributions from Megaupload Limited, the massive infringement complained of herein could not have taken place. Megaupload Limited is therefore contributorily liable for Megaupload users' direct infringement of Plaintiffs' copyrighted works,

including those listed in Exhibit A hereto, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

74. Defendant Dotcom is jointly and severally liable for each act of infringement for which Megaupload Limited is liable because he personally directed and participated in, and benefited from, Megaupload Limited's infringing conduct as alleged herein.

75. Defendants Vestor Limited, Ortmann, and van der Kolk are likewise liable for the acts of infringement identified above for acting in concert with Defendants Megaupload Limited and Dotcom to operate the Megaupload website and for personally directing, participating in, and benefiting from Megaupload Limited's infringing conduct as alleged herein.

76. Defendants' acts of contribution to copyright infringement have been willful, intentional, purposeful, and in disregard of Plaintiffs' rights under the Copyright Act. Defendants knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct. Plaintiffs did not authorize Defendants' acts.

77. Plaintiffs have been harmed as a direct and proximate result of the infringing acts set forth above.

78. As a result of Defendants' willful contribution to copyright infringement, Plaintiffs have suffered and will continue to suffer substantial irreparable harm that cannot fully be compensated or measured in money damages.

\* \* \*

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A. For an award, pursuant to 17 U.S.C. § 504, of Plaintiffs' actual damages and Defendants' profits or alternatively, at Plaintiffs' election, for statutory damages for Defendant's infringement and willful infringement, in the maximum amount allowable by law.

B.      For an order, pursuant to 17 U.S.C. § 502, permanently enjoining and restraining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, vicariously infringing, or otherwise facilitating the infringement of Plaintiffs' exclusive rights under the Copyright Act, or from authorizing any other person to do the same.

C.      For an award, pursuant to 17 U.S.C. § 505, of Plaintiffs' costs, including their reasonable attorneys' fees.

D.      For prejudgment interest according to law.

E.      For such further and additional relief as the Court may deem just and proper.

### DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 10, 2014                    Respectfully submitted,

Thomas G. Hentoff (*PHV application to be filed*)
Eric C. Wiener, VA Bar Number 79206
Gabriel A. Cohen (*PHV application to be filed*)
Nicholas G. Gamse (*PHV application to be filed*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)
thentoff@wc.com
ewiener@wc.com
gcohen@wc.com
ngamse@wc.com

*Attorneys for Plaintiffs*

23